138 So.2d 449 (1962)
Corbertt R. LANDRY, Plaintiff-Appellee,
v.
John L. HUBER, Jr., d/b/a Huber Claim Service, Defendant-Appellant.
No. 502.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1962.
*450 E. M. Nichols, Lake Charles, for defendant-appellant.
Nathan A. Cormie and Fred R. Godwin, Lake Charles, for plaintiff-appellee.
Before TATE, FRUGE and CULPEPPER, JJ.
TATE, Judge.
This is a suit by a former employee against his former employer to recover a stipulated "drawing account" not paid to him during the period of his employment. The defendant appeals from adverse judgment.
The employee was to receive a percentage of the net profit of the firm as compensation for his services, and his drawing account was to be charged against it. The question before us concerns whether the employer is nevertheless liable for such drawing account when there were no net profits resulting from the employee's services.
The defendant Huber owns and operates a claims investigation service. In connection with his opening a branch office in Beaumont, Texas, he entered into a written contract on September 1, 1959 with the plaintiff Landry. Under the terms of this agreement, Landry was to manage the Beaumont office, and his compensation was to be based upon one-half of the net profits of the Beaumont office. The contract also provided that Landry was to be paid a drawing account of $450 per month, which was to be deducted from the share of the net profits he was to receive as compensation.
The contract was terminated by the defendant Huber as of December 23, 1959 after appropriate notice to the plaintiff Landry. The Beaumont office made no profits. Landry had been paid the monthly drawing account stipulated in the contract up to November 15, 1959; but Huber refused to pay him any compensation for the period between November 15 and December 23, contending that the drawing account was only an advance against Landry's share of the net profits and that, since there were no net profits, he was not liable to Landry for any drawing account for the period in question.
The relationship between the defendant Huber and the plaintiff Landry was that of employer and employee. By the contract, Huber specifically agreed to "employ" Landry in the capacity of manager of his Beaumont office; and, although Landry was to be compensated from a share of the net profits, he owned no interest in the assets *451 of the Beaumont office, nor did the agreement provide that he was to be liable for any net losses. See Walker v. Delahoussaye, La.App. 1 Cir., 116 So.2d 884, and the cases cited therein.
It is well settled that an excess of advances to an employee over the actual commissions or profits earned, from which the advances are to be deducted, cannot be recovered by the employer (Southern Molasses Co. v. Boutcher, 172 La. 691, 135 So. 27; Bardwell v. Szatmary, La.App. 2 Cir., 99 So.2d 420; A. Gagliano v. Clark, La.App. Orl., 63 So.2d 252; Karno's v. Schneider, La.App.Orl., 39 So.2d 851; Lawton v. Scott, La.App.2d Cir., 29 So.2d 614; American Furniture Co. v. Snell, La.App. 2 Cir., 164 So. 478); in the absence of an express or implied agreement of the employee to repay such excess (Rex-Metallic Casket Co. v. Gregory, La.App. 2 Cir., 115 So.2d 639, certiorari denied; McCardle v. Nagim, La. App.Orl., 61 So.2d 267). See also Annotation, "Personal liability of servant or agent for advances in excess of commissions earned", 57 A.L.R. 33, supplemented 165 A.L.R. 1367.
These decisions admittedly concern the converse of the present situation. In them, following termination of the contract, the employer sought to recover from the employee the excess of advance or drawing account paid over the commissions or profits actually earned. The courts there held that, in the absence of agreement otherwise, the advance or drawing account is in the nature of an investment on the part of the employer to compensate the employee for his living expenses and services while he is working to increase the business of his employer. The employee was therefore held entitled to retain the full amount of the drawing account or advances received, even if they were in excess of the commissions or profits actually earned.
Unless the parties had agreed otherwise, the courts thus treat a drawing account as being in the nature of a guaranteed minimum compensation for the services of an employee, rather than as being a loan against the commissions or profits to be earned. The trial court held, correctly in our opinion, that the same principle is applicable to the present case, where an employee sues to recover the unpaid drawing account which the defendant employer had agreed to pay him during his employment.
Other than the cited cases concerning the converse of the present situation, there is no Louisiana case directly in point. However, a majority of American jurisdictions passing upon the question have reached the same conclusion as we do: In the absence of contrary agreement, a contract to pay an employee a specified sum periodically, which is to be charged against future commissions or profits, entitles him to recover this drawing account during entire term of the contract, regardless of the commissions or profits earned. See: 56 C.J.S. Master and Servant § 91, p. 521 and § 95, p. 525; McConnell v. Baker, 170 S.C. 111, 169 S.E. 842 (1933); Davis v. Manchester, 17 R.I. 577, 23 A. 1016 (1892). See also: North Western Mut. Life Ins. Co. v. Mooney, 108 N.Y. 118, 15 N.E. 303 (1888); Royal Distributors Co. v. Friedman, Sup., 141 N.Y. S.2d 786 (1955), citing other jurisprudence. Accord (although perhaps distinguishable on facts): Hubbard v. Marsh, 241 Iowa 163, 40 N.W.2d 488 (1950); Bankers Union Life Ins. Co. v. Atschel, 97 Colo. 377, 49 P.2d 385 (1935). Contra: Theriault v. E. L. King & Co., 282 Mass. 109, 184 N.E. 386 (1933); Clarke v. Eastern Advertiser Co., 106 Me. 59, 75 A. 303 (1909).
The defendant-appellant further urges, however, that under the terms of the present agreement the plaintiff Landry had agreed to return any excess of the drawing account paid over the net earnings, so that the defendant employer is thus not liable for any unpaid drawing account. Specifically, able counsel relies upon a clause of the contract providing that, where the net profit for any calendar month was less than the $450 drawing account paid to the manager, *452 then that "the amount of the deficit will be charged to the manager and will be applicable to other calendar months in any other calendar years."
Construing the contract as a whole, we do not find this argument to be persuasive. (The pertinent clauses are quoted in full in an appendix to this opinion.) As we construe the terms of the contract, the employee was to be paid his drawing account of $450 each month, whether or not the net profit equalled this amount. In any month in which the net profit did not equal this amount, then the deficit was to be charged against net profits earned in other calendar months, for purposes of computing the employee's ultimate share of the net profit in the annual accountings. (The employee was entitled at the times of such annual accountings to receive the excess of net profits over the amounts which had been paid to him as his drawing account.)
The agreement provided that "any amount due to the manager [the plaintiff Landry] will be payable" following completion of the annual account; but it does not provide that this employee-manager was at such time liable to the employer for any net losses. That is, as we view the contract between the parties, the employee was entitled to receive absolutely the drawing account each month, whether or not the business of the Beaumont office showed a net profit either during that month or over the entire period of operations under the contract.
There was no agreement contained in the contract requiring the employee to repay any drawing account received in excess of the net profits. In the absence of an express promise to repay any excess of the advances over the profits earned, the agreement to carry over a debit against future months, in any month in which the drawing account exceeded the profits, did not imply any agreement to repay any ultimate excess over profits earned, which had been paid through the drawing account during operations under the contract, cf., Karno's v. Schneider, La.App.Orl., 39 So.2d 851.
For the foregoing reasons, the judgment of the trial court in favor of the plaintiff employee is affirmed at the cost of the defendant-appellant.
Affirmed.

APPENDIX
The contract included the following relevant provisions:
"* * * That all salaries, expense accounts and current expenses will be paid by the Home Office including the drawing account of the manager except the purchase of postage stamps which will be purchased by the manager and submitted as part of the expense account of the manager. * * *
"That the compensation of the manager will be based upon one half (½) of the net profit of the Beaumont, Texas, office. * * *
"That the manager will be paid a drawing account ($450.00) Four Hundred and Fifty and no/100 Dollars per month.
"That the manager will be paid an expense account including mileage charged to files at the rate per mile established by the company and other expenses charged to files.
"That the drawing account of ($450.00) Four Hundred and Fifty and no/100 Dollars per month paid to the manager will be deducted from the (½) one half of the net profit to be paid to the manager in accord with the terms of this contract.
"That where the (½) one half of the net profit of the Beaumont, Texas office for any calendar month is in excess of ($450.00 FOUR HUNDRED and FIFTY and no/100 Dollars, the amount in excess of ($450.00) FOUR HUNDRED and FIFTY and no/100 Dollars, will be paid to the manager.
"That where the (½) one half of the net profit of the Beaumont, Texas office for any calendar month is less than the amount of ($450.00) FOUR HUNDRED and FIFTY and no/100 Dollars paid to the manager as a monthly drawing account, the amount of the deficit will be charged to the manager and will be applicable to other calendar months in any other calendar years.
"That there will be an accounting each year of completed calendar months to determine the amount of profit or loss in operation of the Beaumont, Texas office.
"That any amount due to the manager will be payable at the time the accounting is completed, and
"That where the net profit of operation is such that there is a substantial difference between the drawing account of the manager and the amount of profit, the company reserves and has the right to raise the amount paid to the manager as a monthly drawing account. * *"